# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | |
| **ROMERO CABRAL DA COSTA NETO,** | **No. 23-MJ-223 (GMH)** |
| **Defendant.** | |

## DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION FOR DETENTION

Defendant Romero Cabral Da Costa Neto ("Mr. Costa"), by and through his attorneys, submits this Response opposing the United States's ("Government") Motion for Pre-Trial Detention ("Detention Motion" or "Mot."). The Government has failed to adequately justify its extraordinary demand that Mr. Costa—who is charged with a non-violent offense with a relatively low potential Guidelines range, has no criminal record, and at present is lawfully residing in the United States—be detained prior to trial due to a supposed risk of flight. There is no evidence that Mr. Costa intends to flee, nor could he now that he has surrendered his passport. Further, a substantial circle of Mr. Costa's family, including his wife, parents, father-in-law, aunt, and uncle, are now in the Washington, D.C. area. More, the Pretrial Services Agency has approved Mr. Costa's aunt and uncle, who are both U.S. citizens, as third-party custodians. These facts belie the Government's argument that no combination of restrictions can reasonably ensure Mr. Costa's appearance at further court appearances. He should be released to the custody of his family in Miami, Florida, where his aunt and uncle reside, or, alternatively, at Mr. Costa's apartment in Washington.

## **BACKGROUND**

Mr. Costa is a 33-year-old Brazilian lawyer who came to the United States in September 2022 after accepting a one-year foreign associate position with a prominent law firm in Washington, D.C.  Prior to that, he worked as a member of the bar for a major law firm in Brazil. As a Brazilian citizen, Mr. Costa obtained a J-1 work visa that allowed him to live and work in the U.S.  He was joined in Washington by his wife and young child, and the three of them lived in an apartment in the District.  He planned to return to Brazil in September 2023 upon the completion of his temporary position.  Mr. Costa has no criminal history, no history of drug or alcohol abuse, and other than the acts charged in the Complaint, the Government does not assert that Mr. Costa is anything other than a hard-working attorney providing for his young family.  Last Tuesday, August 22, he was arrested in this case with absolutely no notice or opportunity to surrender and has been held in custody since.

Since the moment Mr. Costa's family learned of his arrest, they have provided him with an incredible outpouring of support.  Mr. Costa's wife, who had returned to Brazil ahead of him, almost immediately flew back to Washington from Brazil along with Mr. Costa's mother, father, and father-in-law.  They have been joined here by Mr. Costa's aunt and uncle, who are U.S. citizens living in Miami, Florida.  Their sole purpose for the last several days has been to support Mr. Costa in any way possible, which has included volunteering living arrangements to assure Pretrial Services and the Court that Mr. Costa does not pose a risk of flight.  Those living arrangements would involve Mr. Costa living with his aunt and uncle at their apartment in Miami, or alternatively at Mr. Costa's apartment in Washington.

Unfortunately, the Government has refused to engage in discussions with Mr. Costa's counsel regarding the appropriate conditions of release.  Instead, it mechanically moves for

detention, arguing formulaically that Mr. Costa is a risk of flight because he "already had plans to return to Brazil in September," and that "[i]t appears he would have nowhere to live." Mot. at 9. In addition to stripping Mr. Costa's travel plans from their proper context, the Government's argument ignores the reality that Mr. Costa would be released to a stable living environment with supportive, U.S. citizen family members serving as third-party custodians.

Moreover, Mr. Costa, who has no criminal history, is charged with an insider trading offense with an alleged gain of only approximately $50,000. He has already turned over his Brazilian passport to the Government. And there are absolutely no allegations that Mr. Costa has the skills or resources required to create or obtain fake identification documentation, deceive a trusted third-party custodian and Pretrial Services, and somehow flee to Brazil. Nor would it make sense for him to do so: Given the minor loss amount, he is facing *at most* a short term of incarceration, and if he is caught fleeing the consequences will be far more severe. Assuming he makes it to Brazil, he will never be able to travel, not only to the United States, but to any country that might extradite him here.[1] Under these circumstances, there are unequivocally "conditions [that] will reasonably assure the appearance" of Mr. Costa as required. *See* 18 U.S.C. § 3142(c). Thus, the Government has failed to meet its burden to detain Mr. Costa pending trial in this case. He must be released on conditions.

## **LEGAL STANDARD**

"Our system of criminal justice embraces a strong presumption against detention." *United States v. Hanson*, 613 F. Supp. 2d 85, 87 (D.D.C. 2009). That is because "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United*

---

[1] If the Court requires it, Mr. Costa's uncle, who is a U.S. citizen, is willing to act as a surety on an appearance bond for Mr. Costa. If Mr. Costa fled, his uncle would have to forfeit the entire amount of the bond.

*States v. Salerno*, 481 U.S. 739, 755 (1987); *see also United States v. Munchel*, 991 F.3d 1273, 1285 (D.C. Cir. 2021) (courts "have a grave constitutional obligation to ensure that the facts and circumstances of each case warrant [the] exceptional treatment" of pretrial detention); *United States v. Klein*, 533 F. Supp. 3d 1, 5 (D.D.C. 2021) ("Pretrial detention is the exception, not the norm, under the Bail Reform Act, and the government's burden is thus a heavy one."). The Bail Reform Act sets forth those narrow exceptions and "requires that the Court release a defendant if there are release conditions that reasonably assure that the individual will not present a flight risk or a danger to the community." *United States v. Hassanshahi*, 989 F. Supp. 2d 110, 113 (D.D.C. 2013). The Court must assess the following four factors to determine whether such release conditions exist: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to other people or the community that would be posed by defendant's release. *See* 18 U.S.C. § 3142(g). In crafting conditions of release, courts must recognize that "[s]ection 3142 speaks of conditions that will 'reasonably' assure appearance, not guarantee it." *United States v. Xulam*, 84 F.3d 441, 444 (D.C. Cir. 1996); *see also* H.REP. NO. 1030, 98th Cong., 2d Sess. 15 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3198 (acknowledging feasibility of conditions even "where there is a substantial risk of flight"). "[A] stricter regime 'would be only a disguised way of compelling commitment in advance of judgment.'" *Munchel*, 991 F.3d at 1283 (quoting *United States v. Alston*, 420 F.2d 176, 178 (D.C. Cir. 1969)). "[W]hen the government seeks pretrial detention of an individual on the ground that he poses a risk of flight, the standard it must satisfy is a 'preponderance of the evidence.'" *Xulam*, 84 F.3d at 442 (quoting *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987)).

## ARGUMENT

The four 18 U.S.C. § 3142(g) factors strongly favor Mr. Costa's release on conditions.

### I.     The Nature and Circumstances of the Offense Charged

"In evaluating the nature and circumstances of the offense charged, the judges of this District have considered the seriousness of the offense charged, including whether the alleged crime involves violence." *Hassanshahi*, 989 F. Supp. 2d at 114.  Additionally, the Bail Reform Act "also requires the Court to consider whether the alleged offense involves sex trafficking of children; crimes of terrorism; a minor victim; or a controlled substance, firearm, explosive, or destructive device." *Id.* (citing 18 U.S.C. § 3142(g)(1)).  "The overarching goal of the [section] 3142(g) analysis" is "to ensure that the pretrial release of a defendant will not imperil the safety of any other person and the community." *United States v. Chrestman*, 525 F. Supp. 3d 14, 26 (D.D.C. 2021).  Thus, "a reviewing court should give weight to any particulars of the offense that indicate the defendant continues to pose a threat to public safety." *Id.*

This factor weighs heavily in favor of release.  Insider trading is not a crime of violence, nor does Mr. Costa's alleged offense involve any of the aggravating circumstances set forth in section 3142(g)(1).  The Government concedes, as it must, that Mr. Costa is not a threat to the community.  *See* Mot. at 11.  The D.C. Circuit has instructed courts to "parse violent from non-violent defendants in applying the more stringent incarceration requirements that Congress imposed on the former." *United States v. Singleton*, 182 F.3d 7, 16 (D.C. Cir. 1999).  Here, Mr. Costa's alleged offense is undoubtedly in the latter category, which supports release.  *See United States v. Nwokoro*, 651 F.3d 108, 110-11 (D.C. Cir. 2011) (noting that "facts favoring appellant's pretrial release" included that defendant "is not charged with a violent offense"); *Hassanshahi*, 989 F. Supp. 2d at 114.

There are two additional considerations with respect to the nature of the alleged offense that strongly support release.  First, Mr. Costa does not face much, if any, time in prison.  Under U.S. Sentencing Guideline § 2B1.4 (Insider Trading), Mr. Costa's base offense level is 8, which is increased by 6 for the alleged approximately $50,000 profit for a total offense level of 14.  Given that Mr. Costa has no criminal history, the Guidelines recommend an advisory sentencing range of 15 to 21 months.  Even if an additional enhancement applied, if Mr. Costa qualified for the 3-point Acceptance of Responsibility deduction under U.S.S.G. § 3E1.1, he would have an offense level of 13 and an advisory sentencing range of 12 to 18 months—squarely within Zone C.  Under those circumstances, he would be eligible to spend up to half of the relatively short sentence in home detention.  *See* U.S.S.G. § 5C1.1(d)(2).  And of course, that is assuming that a court sentenced Mr. Costa to a term of incarceration at all.

Mr. Costa's potential advisory sentencing range is far lower than the offense level for other, non-violent defendants alleged to have committed economic crimes who courts in this District have released pending trial.  Take *United States v. Hanson*, 613 F. Supp. 2d 85 (D.D.C. 2009) as one example.  There, the defendant, a dual citizen of both the United States and China, was alleged to have violated export control laws for which the base offense level was 26.  *Id.* at 87.  That left the defendant "facing a guideline sentencing range of between 63 and 78 months in prison"— several times what Mr. Costa faces here.  *Id.*  The court nevertheless released the defendant with conditions.  *Id.* at 90-91.  Other courts have done the same with defendants charged with other securities crimes.  *See, e.g.*, *United States v. Spivak*, 555 F. Supp. 3d 541, 547 (N.D. Ohio 2021) (granting securities fraud defendant pretrial release after finding that government had not proven risk of flight where family members lived with defendant, he voluntarily surrendered his passport, and ties to foreign country could "be managed with home detention and electronic monitoring");

*United States v. Madoff*, 586 F. Supp. 2d 240, 249 (S.D.N.Y. 2009) (granting largest Ponzi schemer in U.S. history pretrial release and explaining that the Bail Reform Act "does not require that the risk [of flight] be zero, but that conditions imposed 'reasonably assure' appearance").  The result should be no different here.

Even the cases relied upon by the government to justify detention show that Mr. Costa's alleged criminal conduct is relatively minor in comparison.  In *United States v. Bikundi*, 47 F. Supp. 3d 131 (D.D.C. 2014)—discussed by the Government, *see* Mot. at 10—the defendant "engaged in a massive fraud in which she and organizations she operated obtained over $75,000,000 in funds from the Medicaid program," for which her offense level was estimated to be up to 35, "resulting in an advisory guideline range of 168 to 210 months' incarceration."  *Id.* at 134.  That is obviously not this case, where Mr. Costa is alleged to have made approximately $50,000 in profits.  The Government concedes, as it must, that "the dollar amount" of Mr. Costa's transactions "does not appear large."  Mot. at 8.  Likewise, the Government relies on *U.S. v. Medina Coronado*, but there the defendant was charged as a "central" participant in a conspiracy to distribute more than five kilograms of cocaine.  588 F. Supp. 2d 3, 5 (D.D.C. 2008); *see* Mot. at 10.  The Government's citation to *United States v. Sheikh*, 994 F. Supp. 2d 736 (E.D.N.C. 2014) is likewise inapposite.  *See* Mot. at 10.  In that case, the Government alleged that defendant "sought to provide support to a designated terrorist organization known as the al-Nusrah Front, which is an alias for al-Qa'ida in Iraq" and "was eager to join violent jihad."  *Id.* at 740.  Mr. Costa is obviously facing a much shorter potential sentence here.

Second, there are no indications from the alleged offense (or otherwise) that Mr. Costa possesses the criminal ingenuity and deception necessary to flee to Brazil without a passport, which he has surrendered.  The D.C. Circuit has found that fact of particular relevance in

determining a defendant's risk of flight. *See, e.g.*, *Nwokoro*, 651 F.3d at 110 (noting that "facts favoring appellant's pretrial release" included that defendant "does not have possession of his . . . passports (which are in government custody) with which to leave this country"); *Xulam*, 84 F.3d at 443 (ordering non-citizen defendant released on conditions where, as here, "the government has taken away all his passports and travel documents, so it is unlikely he could go far even if he wished to"). Unlike many other defendants accused of criminal fraud—including the defendant in *Xulam*, whose alleged crime was forging a passport application, *see id.* at 441—there are no allegations that Mr. Costa used false identification, fraudulent documents, or an alias as part of the offense. The Government even alleges that he purchased the stocks at issue in brokerage accounts in his own name. Statement of Facts at 2, *U.S.A. v. Costa*, No. 23-mj-223 (D.D.C. 2023). Mr. Costa's lack of "unique ability to leave the U.S." and the absence of efforts to conceal his conduct are significant. *See Nwokoro*, 651 F.3d at 111 (emphasizing that defendant was not "otherwise shown to have forgery skills, much less resources within the United States, giving him the unique ability to leave the United States"). The Government feebly attempts to argue that Mr. Costa is an unethical, "deceitful" attorney (and it is true that the unindicted offense does allege a serious breach of trust). Mot. at 8. But what the Government is really trying to argue—and cannot—is that the facts of the alleged offense show that Mr. Costa poses a serious risk of flight. *See United States v. Padilla*, 538 F. Supp. 3d 32, 49 (D.D.C. 2021) (noting that it is the government's "burden of establishing by a preponderance of the evidence that [defendant] poses a serious risk of flight"). There are no such facts. *See Hassanshahi*, 989 F. Supp. 2d at 118 ("It is true, as the Government points out, that electronic monitoring is not foolproof and that it is possible that [the defendant] could overcome several significant obstacles to get to Iran. But those general arguments are

speculative and do not focus on this defendant.  The law only requires release conditions that will reasonably *ensure* a defendant's appearance, not foolproof conditions.").

Accordingly, the nature and circumstances of Mr. Costa's alleged crime strongly favor release.

## II.    The Weight of the Evidence Against the Defendant

The weight of the evidence "is the least important factor" in the detention analysis.  *United States v. McAbee*, 628 F. Supp. 3d 140, 154 n.9 (D.D.C. 2022), *aff'd*, 2022 WL 17101252 (D.C. Cir. Nov. 22, 2022); *see also United States v. Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008); *United States v. Fitzsimons*, 2021 WL 4355411, at *5 (D.D.C. Sept. 24, 2021); *Klein*, 533 F. Supp. 3d at 15.  This is "because any consideration of the weight of the evidence must acknowledge the defendant's pretrial presumption of innocence."  *United States v. Figueroa-Alvarez*, 2023 WL 4485312, at *7 (D. Idaho July 10, 2023).  Here, the government's case appears to be built solely on records from Mr. Costa's law firm allegedly showing that he accessed client files, and his personal brokerage account records allegedly showing that he profited from stock trades involving those clients.  Mr. Costa also purportedly waived his *Miranda* rights and admitted to accessing certain client files.

Because the Government has not indicted Mr. Costa and he has yet to receive discovery, he has not had the opportunity to review the alleged records.  What is evident, though, is that at present the Government has only a paper case.  It cites no corroborating evidence from witnesses regarding statements made by Mr. Costa, nor does it reference any of Mr. Costa's e-mail, text, or other electronic communications (and it presumably has at least Mr. Costa's work e-mails given that his former law firm provided IT records, *see* Statement of Facts at 2-3).  Likewise, even in the

Government's account of Mr. Costa's alleged post-*Miranda* statements, he did not admit to insider trading.

Thus, even if the Government's one-sided presentation of the evidence does not support release, it certainly cannot overcome the remaining factors that strongly favor Mr. Costa's release.

## III.   The Defendant's History and Characteristics

"A defendant's history and characteristics encompass many aspects of the individual's life and background." *Hassanshahi*, 989 F. Supp. 2d at 115.   Under section 3142(g)(3), relevant considerations are:

> the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings.

18 U.S.C. § 3142(g)(3)(A).   Additionally, courts are also to consider "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release." *Id.* § 3142(g)(3)(B).   In this Circuit, courts also "consider certain personal factors related to the defendant's background, including his education, assets, employment, family, and other personal ties to the United States and the jurisdiction specifically." *Nwokoro*, 651 F.3d at 110–11.   And it bears repeating that the "overarching goal of the [section] 3142(g) analysis" is "to ensure that the pretrial release of a defendant will not imperil the safety of any other person and the community." *Chrestman*, 525 F. Supp. 3d at 26.

With due consideration to section 3142(g)'s "overarching goal," it is clear that a number of the factors relevant under section 3142(g)(3) counsel in favor of release.   To start, Mr. Costa lacks a criminal record and has no record of missing court appearances.   He has no history of drug or alcohol abuse.   The Government has not expressed any concerns about his physical and mental condition and why either would preclude release.   Likewise, aside from the allegations in the

Complaint, the Government has pointed to no past conduct that would militate in favor of detention.  Nor has the Government made any allegation regarding Mr. Costa's financial resources, much less how they enhance his risk of flight.  These factors, both alone and in combination, show that detention is inappropriate.

Unable to make its case based on arguably the most relevant factors in the section 3142(g) analysis—criminal history and his record concerning appearances at court proceedings—the Government instead focuses its arguments on Mr. Costa's alienage.  Mot. at 9-10.  The Government's argument is flawed on several levels.  To start, despite being from Brazil, Mr. Costa now has extensive ties to the United States because he has such impressive family support.  As discussed in detail above, following Mr. Costa's arrest half a dozen of his family members have descended on Washington from Brazil and Miami to support him in any way they can.  In addition, Mr. Costa has two U.S. citizen adult cousins (the sons of his aunt and uncle) who also live in Miami, Florida and are married with young children that provide additional ties to this country.  Several of his family members have volunteered to live with Mr. Costa and serve as a third-party custodian, either in his current apartment in the District or at the apartment of his U.S. citizen aunt and uncle in Miami.  Mr. Costa's attorneys have had extensive discussions with the assigned Pretrial Services officer, who has already advised that Mr. Costa's aunt and uncle are suitable third-party custodians.  As a result, the Government's contentions that Mr. Costa "has no ties to the community" and that "[h]is entire family . . . are in Brazil" are no longer true.  Mot. at 9.  With many family members now here in the U.S., Mr. Costa has every "incentive to stay."  *Id.* Additionally, if necessary, Mr. Costa's U.S. citizen uncle is willing to sign an appearance bond for Mr. Costa as a surety—providing a strong disincentive for Mr. Costa to fail to appear at his court appearances in this case.

Courts in this Circuit have granted pretrial release under similar facts.  In *Xulam*, the D.C. Circuit reversed a district court's decision to hold a Kurdish national pending trial.  84 F.3d at 444. As here, the Defendant was charged with a non-violent offense, his passports were seized— meaning "it is unlikely he could go far even if he wished to"—and there was "no outstanding deportation order against" the defendant.  *Id.* at 443-44.  Importantly, *Xulam* emphasized that the conditions of release need not eliminate risk of flight: "Section 3142 speaks of conditions that will 'reasonably' assure appearance, not guarantee it."  *Id.* at 444.  Similarly, in *Hassanshahi*, a court in this District released an Iranian national accused of non-violent economic crimes where, as here, the defendant surrendered his passport, had family living in the United States, and a substantial bond was posted.  *See* 989 F. Supp. 2d at 118.  Critically, nothing in the record reflected defendant's intent to flee, including (just as here) the defendant booking a return trip to foreign country.  *Id.* at 117 & n.4.  And these are hardly the only examples of courts granting pretrial release to defendants fitting Mr. Costa's profile.  *See, e.g.*, *Hanson*, 613 F. Supp. 2d at 89-90 (Chinese national granted pretrial release on non-violent criminal charges where "there is no strong circumstantial evidence indicating that [defendant] intends to flee the United States" and Defendant surrendered her passport, submitted to electronic monitoring, and posted home as a security); cf. *United States v. Karni*, 298 F. Supp. 2d 129, 131-33 (D.D.C. 2004) (Israeli/South African national granted pretrial release where defendant had no family or other ties to United States but was subject to electronic monitoring, 24/7 personal monitoring, and $175,000 bond).

Further, to the extent the Government argues that Mr. Costa should not be released because his visa is scheduled to expire next month, *see* Mot. at 9, that is not the law.  The Government argues only that Mr. Costa is a flight risk and should be detained under 18 U.S.C. § 3142(f)(2)(A), *see* Mot. at 1, not that he should be detained under the automatic detention provisions of 18 U.S.C.

§ 3142(d).  In such situations where "the government did not move . . . for temporary detention under section 3142(d)," the D.C. Circuit has advised that "it does not seem legitimate . . . to now introduce the specter of a possible deportation through the back door as a principal reason for detention." *Xulam*, 84 F.3d at 444.  Accordingly, the *Xulam* court ordered the defendant released despite potential deportation proceedings pending an INS immigration detainer that had been lodged in the case.  *Id.* at 441.  Thus, there is no bar on the Court releasing Mr. Costa because he faces an uncertain immigration status.

Further, a recent Special Report from the Department of Justice's Bureau of Justice Statistics shows that defendants without legal immigration status are actually *less* likely to fail to appear than U.S. citizens or lawful residents.  *See Figueroa-Alvarez*, 2023 WL 4485312, at *12 n.8 (citing March 2022 study showing that released alien defendants fail to appear at a *lower* rate than U.S. citizen or [lawful permanent resident] defendants").  Indeed, according to the same analysis, alien defendants granted pretrial release were *less* likely to fail to appear or violate conditions of release than non-alien defendants."  *Id.* at *6 (citing https://bjs.ojp.gov/content/pub/pdf/prmfdcfy1118.pdf).  Thus, statistically Mr. Costa's immigration status makes him less likely to fail to appear or otherwise fail to abide by the Court's conditions of release.

The Government's remaining arguments lack merit.  It suggests the fact that Mr. Costa "already had plans to return to Brazil in September and law enforcement noted two suitcases in plain view inside of his apartment" is somehow probative of his risk of flight.  Mot. at 9.  Mr. Costa's return trip to Brazil was set well before his arrest and therefore does not evince any effort to evade law enforcement.  *See United States v. Hitselberger*, 909 F. Supp. 2d 4, 8–9 (D.D.C. 2012) (ordering defendant released pending trial despite fact that defendant was traveling abroad while under investigation because defendant "was legally free to travel until the warrant for his

arrest was issued, and the government made a calculated decision to keep the existence of that warrant a secret"); cf. *id.* at *8 ("[T]he court does not accept the government's argument that he was effectively a fugitive while traveling . . . before his arrest.  To be a fugitive, one must flee from something.").  Indeed, if anything, the fact that Mr. Costa was planning to depart the United States upon the end of his job in accordance with this country's immigration laws shows that he is both willing and able to abide by any conditions of release set forth by this Court.  The Government also mentions Mr. Costa's expiring lease, *see* Mot. at 9; while correct that his current lease ends on September 22, 2023, Mr. Costa and his family could obtain another apartment in the District with the approval of Pretrial Services.

Finally, the Government claims to "not see the logic in sending [Mr.] Costa further away from D.C. to South Florida" on home confinement.  Mot. at 10.  The logic is simple:  Mr. Costa has family ties to Miami, and his U.S. citizen aunt and uncle have an apartment there and are willing to host Mr. Costa and act as his third-party custodians.  Additionally, neither the Government nor this Court can be surprised that a defendant has proposed release on conditions in another judicial district.  Indeed, courts in this District routinely release defendants on conditions in locations outside of Washington, with those defendants reporting to the Pretrial Services Agency in their home district.  *See, e.g.*, *United States v. Foy*, 2021 WL 2778559, at *5 (D.D.C. July 2, 2021) (releasing defendant charged with offenses related to the events of January 6, 2021 "into home confinement with GPS monitoring under the courtesy supervisions by the Pretrial Services Agency of the Eastern District of Michigan" where defendant had family connections); *United States v. Owens*, 541 F. Supp. 3d 102, 119 (D.D.C. 2021) (ordering defendant charged with offenses related to the events of January 6, 2021 released pending trial under the "supervision [of] Pretrial Services in the Western District of Texas" in part because "defendant has extremely strong

ties to the Western District of Texas," including family connections).  There is no reason why similar arrangements cannot or should not be approved here.

## IV.    The Defendant's Danger to the Community

Mr. Costa is obviously not a danger to the community, which the government concedes. *See* Mot. at 11.  It also admits that Mr. Costa cannot reoffend because "he no longer has access to material non-public information."  *Id*.  This factor therefore weighs in favor of release, as other courts in this Circuit have found.  In *Hassanshahi*, for instance, the defendant was granted pretrial release where, as here, "the underlying crime is not a crime of violence, nor does it involve any of the other factors set forth in [18 U.S.C. §] 3142(g)(1)" and the facts did "not suggest that [defendant] engaged in any violence, or threats of violence, in the course of his alleged transactions."  989 F. Supp. 2d at 114; *see also Singleton*, 182 F.3d at 16.

**CONCLUSION**

The Government has not met its "heavy" burden to justify Mr. Costa's pretrial detention. Mr. Costa faces a relatively short sentence even if convicted, he lacks a criminal record and any history of missing court appearances, there is no evidence that he possesses the skills or intent needed to flee the country without a passport, and the Government concedes that he poses no danger to the community.  In these circumstances, and with much of Mr. Costa's immediate family now here in the United States and waiting in the wings to support him, detention is not warranted. Accordingly, Mr. Costa should be released, on conditions, to a third-party custodian approved by Pretrial Services.

Respectfully Submitted,

Date: August 28, 2023                By: */s/ Kenya K. Davis*
                                        Kenya K. Davis, D.C. Bar. No. 502305
                                        Blake C. Goebel (*pro hac vice* pending)
                                        BOIES SCHILLER FLEXNER LLP
                                        1401 New York Ave., N.W.
                                        Washington, D.C. 20005
                                        Tel: (202) 237-2727
                                        bgoebel@bsfllp.com
                                        kdavis@bsfllp.com

                                        *Attorneys for Defendant Romero Cabral Da Costa Neto*